# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARTIN J. VITTANDS, JR.,

                      Plaintiff,                    No. 11-cv-15241
                                                Hon. Gerald E. Rosen

vs.

BANK OF AMERICA, NA and FREDDIE
MAC,

                      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Martin J. Vittands, Jr. ("Plaintiff") filed suit in Oakland County Circuit Court on October 7, 2011, alleging three counts against Defendants Bank of America, N.A. and Freddie Mac ("Defendants"). Each of Plaintiff's three claims arises out of a mortgage modification purportedly entered into in 2008. Defendants removed the case to this Court on November 29, 2011. On December 6, 2011, Defendants filed a motion to dismiss Plaintiff's complaint. Plaintiff responded on December 15, 2011. Defendants subsequently replied on January 3, 2012. Because the briefs and the record are sufficient for deciding the Defendants' motion, the Court will issue its decision without oral argument. E.D. Mich. LR 7.1(f)(2).

## II. FACTUAL BACKGROUND

On September 2, 2005, Plaintiff obtained a mortgage from Countrywide Home Loans, Inc.[1]  In 2008, Plaintiff had trouble paying his mortgage and consequently defaulted.  In an effort to avoid foreclosure, Plaintiff received a loan modification packet on September 8, 2008.  The mailing included a letter describing the loan modification process and a form for Plaintiff to sign and return.  The letter stated that Countrywide "may be able to lower [Plaintiff's] monthly payment" so long as Plaintiff signed, dated and returned the enclosed form by October 5, 2008.  The form also included a line for the signature of a Countrywide representative.  Countrywide had not signed the form when Plaintiff received it.

Plaintiff returned the form on September 15, 2008.  However, the form was improperly notarized, and Plaintiff made a handwritten amendment to the form.  Where the form stated that Plaintiff's unpaid balance stood at $183,417.96, Plaintiff made a notation stating "Less $5,125.74 paid on 9-11-08" and initialed the amendment.  After returning the form, Plaintiff began making monthly payments of $1,346.99.  This was the amount referenced in the letter accompanying the loan modification form.  According to Plaintiff, representatives of Countrywide orally counseled Plaintiff to make payments in this amount as well.  On January 12, 2009, Plaintiff received notice that his loan modification was rejected due to "incomplete modification documents."  In response to the rejection letter, on January 29, 2009, Plaintiff re-sent a signed copy of the loan

---

[1] The mortgage and promissory note are currently owned and serviced by Bank of America, N.A.

modification form.  This second form was properly notarized and lacked Plaintiff's
handwritten modification.

On August 23, 2011, Plaintiff received correspondence indicating that his
mortgage was $21,437.13 in arrears.  Plaintiff disputes this amount because he has
regularly made the reduced payments referenced in the loan modification packet.  In
response to the letter, Plaintiff filed this suit contesting his debt based on the loan
modification agreement purportedly entered into and Defendants' subsequent conduct.
Plaintiff claims that Defendants have failed to honor their agreement regarding his loan
modification.  Accordingly, Plaintiff asserts three related causes of action: (1)
enforcement of the parties' contract, (2) ratification of the loan modification based on
Defendants' conduct, and (3) equitable estoppel due to Plaintiff's reliance on the loan
modification offer.

## III. ANALYSIS

### A.    Applicable Standard

Rule 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a
claim upon which relief can be granted."  The Court must construe the complaint in the
light most favorable to Plaintiff and accept all well-pled factual allegations as true.
*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  To
withstand dismissal, however, a complaint "requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations in the complaint,

3

accepted as true, "must be enough to raise a right to relief above the speculative level,"
and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has
facial plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft
v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, while the Court accepts factual
pleadings as true, the same does not hold for legal conclusions. *Id.* ("the tenet that a court
must accept as true all of the allegations contained in a complaint is inapplicable to legal
conclusions.").

   When, as here, the parties rely on documentary evidence when contesting a motion
to dismiss, Rule 12(d) generally requires that the Court treat the motion as seeking
summary judgment instead. Fed. R. Civ. P. 12(d). Here, however, the documents
referenced were incorporated as part of Plaintiff's complaint and form an integral part of
Plaintiff's claims. Accordingly, the Court will treat Defendants' motion as seeking
dismissal rather than summary judgment. *Robinson v. Select Portfolio Servicing, Inc.*,
11–11357, 2011 WL 6122776, at *2 (E.D. Mich. Dec. 9, 2011).

## B.    Breach of Contract

   Plaintiff's first cause of action seeks enforcement of the loan modification
purportedly entered into by the parties. That is, Plaintiff alleges a loan modification
contract was formed when he returned the initial modification form and that his arrearage
constitutes a breach thereof. Defendants argue that dismissal is appropriate because --

having not signed the loan modification -- Plaintiff's claim runs afoul of the statute of frauds.

"Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Pakideh v. Franklin Comm. Mortg. Group, Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995). "[A] contract requires mutual assent or a meeting of the minds on all essential terms." *Burkhardt v. Bailey*, 680 N.W.2d 453, 463 (Mich. Ct. App. 2004). The existence of mutual assent is evaluated using an objective standard: the Court looks to the express words and outward conduct of the parties, not their subjective states of mind. *Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich Ct. App. 1992).

In addition to the basic rules governing the formation of an enforceable contract, the legislature has designated certain contracts as requiring further, written proof. For present purposes, the relevant provision of law requires a writing, signed by the party against whom enforcement is sought, in any suit to enforce a financial institution's promise or commitment to lend money, modify credit, or otherwise make a financial accommodation. Mich. Comp. Laws § 566.132(2)(a)-(b). This statute has been interpreted very broadly; it has been described as "an unqualified and broad ban" that uses "generic and encompassing terms" to "absolutely" protect promises and commitments made by financial institutions. *Crown Tech. Park v. D&N Bank*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000).

5

Plaintiff's contract enforcement claim rests on the assertion that a binding loan modification contract was formed when Plaintiff signed and returned the form included in his loan modification mailing.  (Compl. ¶ 24.)  Since Plaintiff alleges he entered into a binding contract, objective assent on Defendants' part must be shown or pled to survive dismissal.  *Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich Ct. App. 1992).  Further, because Plaintiff alleges a commitment to modify his loan, the modification at issue here unquestionably falls within § 566.132(2)(b), which requires a signed writing in order to enforce the purported "promise or commitment to . . . modify[] or permit a delay in repayment or performance" of Plaintiff's mortgage.  Mich. Comp. Laws § 566.132(2)(b).  However, an examination of the pleadings unequivocally shows that Plaintiff has not proffered a written instrument, signed by Defendants, that commits to the loan modification alleged.  Nor has Plaintiff pled as much.  It thus appears that Plaintiff has not met the burden required by the Michigan statute of frauds and that dismissal is appropriate.  *Id.*

In response, Plaintiff alleges that Defendants signed the cover letter accompanying the loan modification form and that this satisfies the statute of frauds.  (Pl.'s Resp. Mot. to Dismiss 7.)  Specifically, Plaintiff points to the closing of the cover letter, which is signed "Sincerely, The Hope Team".  (Compl. Ex. 2.)  Further, Plaintiff directs the Court's attention to *White v. BAC Home Loan Servicing*, 10-cv-0119, 2011 WL 4479299, at *8 (N.D. Ga. Sept. 26, 2011), where the court held that a similar closing -- as well as

the corporate logo, name, and address on the letter -- satisfied the statute of frauds in a loan modification case.

Plaintiff's reliance is misplaced, however, because *White* differs in material respects from this case. The letter relied upon in *White* used language that objectively demonstrated assent to a contract by the bank. *Id.* Specifically, the *White* defendant's letter stated that the borrower's loan modification "had been approved" and laid out specific steps for the borrower to take in response. *Id.* The letter further stated that the borrower's "new modified monthly payment will be $1,044.33" and used similarly determinate language regarding the borrower's new interest rate. *Id.* (emphasis added).

Here, by contrast, Defendants' letter merely stated that a loan modification "may" be possible. (Compl. Ex. 2.) The letter further stated that Defendants "want to work with [Plaintiff] to get [his] loan current again." (*Id.*) Unlike in *White*, none of the language contained in the loan modification mailing suggests objective intent to contract. Rather, Defendants clearly used noncommittal language. Regardless of whether the letter's closing constitutes a signature sufficient to satisfy the statute of frauds, the language used in the letter does not objectively demonstrate the assent necessary to form a binding contract; the letter only uses precatory, conditional language. *Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich Ct. App. 1992). Moreover, the loan modification form returned by Plaintiff was not signed by Defendants. Accordingly, since Plaintiff seeks to enforce a commitment regarding credit modification, there is

7

insufficient evidence to meet the statute of frauds.  Mich. Comp. Laws § 566.132(2)(b).

Therefore, dismissal of Plaintiff's claim is appropriate.  Fed. R. Civ. P. 12(b)(6).

## C.      Ratification and Estoppel

Plaintiff's second and third claims -- titled ratification and estoppel, respectively --

seek to enforce the purported loan modification by virtue of Defendants' acts, rather than

Plaintiff's submission of the loan modification form.  Specifically, Plaintiff's ratification

claim alleges that Defendants "have ratified the loan modification by their failure to

foreclose, by accepting payments made under the loan modification agreement, and by

their failure to otherwise exercise any rights under the original mortgage."  (Compl.

¶ 25.)  Plaintiff's estoppel claim asserts that the loan modification should be enforced

because Plaintiff reasonably relied on the loan modification terms described in the

mailing he received.  (Compl. ¶¶ 27-28.)  As explained below, the Court will dismiss

both claims for failing to meet the statute of frauds.  Fed. R. Civ. P. 12(b)(6); Mich.

Comp. Laws § 566.132(2)(b).

Attempting to enforce a financial institution's promise regarding a loan

modification requires a written instrument signed by the party against whom enforcement

is sought.  Mich. Comp. Laws § 566.132(2)(b).  The statute itself is extremely broad, *see*

Part III.B, *infra*; by using the term "an action", § 566.132(2)(b) "preclude[s] all actions

for the enumerated promises and commitments, including actions for promissory

estoppel[,]"  *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App.

2000) (emphasis original).  Indeed, in *Crown*, the court broadly construed the Michigan

8

statute of frauds, stating that "the Legislature used the broadest possible language in [§566.132(2)] to protect financial institutions by not specifying the types of 'actions' it prohibits, eliminating the possibility of creative pleading to avoid the ban." *Id.*

Plaintiff's ratification and estoppel claims attempt to enforce Defendants' purported promise regarding Plaintiff's loan. Ratification and estoppel are merely creative attempts at skirting the evidentiary burden established by § 566.132(2). *Id.* As claims to enforce a loan modification against a financial institution, they clearly fall within the ambit of the statute of frauds. Mich. Comp. Laws § 566.132(2). Michigan courts have made clear that § 566.132(2) effectuates a broad ban on claims against financial institutions to enforce promises regarding loan modifications. *Crown*, 619 N.W.2d at 72. Plaintiff may not circumvent the statute of frauds by framing his claim in an inventive way. As with his first claim, having failed to plead facts or present evidence suggesting Defendants signed a loan modification document embodying the promise alleged, Plaintiff's claims necessarily fail. Fed. R. Civ. P. 12(b)(6).

The Court's conclusion is underscored by the terms of Plaintiff's mortgage. While Plaintiff relies on Defendants' acceptance of payments and failure to foreclose in support of his claims, the original mortgage clearly states that Defendants "may accept any payment or partial payment insufficient to bring the Loan current without waiver of any rights hereunder . . . ." (Compl. Ex. 1, at 3.) The mortgage further states that "[a]ny forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount due, shall not be a

9

waiver of or preclude the exercise of any right or remedy." (*Id.* at 7.)  These provisions

clearly enable Defendants to accept partial payments and elect against foreclosure

without waiving the obligations and remedies embodied in the mortgage.

Plaintiff relies on a single case, *Opdyke Investment Co. v. Norris Grain Co.*, 320

N.W.2d 836, 842 (Mich. 1982), in support of his claim that "[i]n Michigan, a Statute of

Frauds defense does not bar a claim of estoppel."  (Pl.'s Resp. Mot. to Dismiss 8.)

However, *Opdyke* -- which concerned promises purportedly made in a letter of intent

involving the construction of a sports arena -- is entirely inapposite to Plaintiff's case.

*Opdyke*, 320 N.W.2d at 837-38.  In *Opdyke*, the court held that certain non-contractual

promises fell outside of the statute of frauds.  *Id.* at 842.  Importantly, however, *Opdyke*

involved different provisions of the statute of frauds than that which is relied upon here:

namely, Mich. Comp. Laws §§ 566.108, 566.132(1)(a), and 440.8319.  *Id.* at 840 n.2.

Each of the statutory provisions at issue in *Opdyke* specifically refers to "contracts" or

"agreements" that require signed, written proof as a prerequisite to enforcement.  This

was critical to the court's holding.  *Id.* at 842.

By contrast, the statute at issue here, § 566.132(2), only refers to "promises" and

"commitments".  Mich. Comp. Laws § 566.132(2) ("An action shall not be brought

against a financial institution to enforce any of the following promises or commitments of

the financial institution unless the promise or commitment is in writing and signed with

an authorized signature by the financial institution[.]").  As such, the *Opdyke* holding --

that certain non-contractual promises do not fall within the strictures of the statute of

10

frauds -- does not apply.  Non-contractual promises made by financial institutions still fall within § 566.132(2) as written.  *Cf. Opdyke*, 320 N.W.2d at 842.  Therefore, having failed to plead facts or present evidence sufficient to satisfy the statute of frauds, dismissal of Plaintiff's claims is appropriate.

## CONCLUSION

It is the practice of this Court to provide an opportunity to amend when a plaintiff is faced with a dismissal that is readily curable.  Here, amendment of Plaintiff's complaint would be futile.  As discussed above, each of Plaintiff's claims fall within the statute of frauds.  Accordingly, Plaintiff's claims hinge on the presentment of a proper signed writing.  While Plaintiff has offered allegations and evidence on point, the signed writings relied upon plainly do not suffice.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Subsequent amendment would not cure this defect.  Therefore, for the reasons stated in this opinion, dismissal of Plaintiff's complaint is warranted.

THEREFORE, IT IS HEREBY ORDERED that Defendants' motion to dismiss [Dkt. #5] is GRANTED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: May 15, 2012

11

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 15, 2012, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137